Take your time to set up. Let me go ahead and call the second case. It's number 21-13289 in Form Incorporated versus Google LLC et al. Mr. Lowery. Thank you, Your Honor. Unless you want to direct me elsewhere, I thought I would start with the shotgun pleading ground. The first of the two shotgun pleading sins that the district judge finds are committed by the amended complaint are our purported inclusion of vague, conclusory, immaterial facts not clearly connected to a particular cause of action. As you may recall, the first order identified one such allegation, which were the allegations about European Union antitrust enforcement. The second order identifies three newly expressed concerns about material that was in the original complaint. Namely, we had allegations about the growth of Google's search engine, its acquisition of certain companies, and its efforts to influence antitrust regulators and avoid enforcement. Now, first, those are not immaterial. And we explained this in the brief, but briefly, the growth of Google's search engine is the history of how it acquired monopoly power in the successive markets. Under the standard definition of monopoly power, the U.S. versus Grinnell definition, how a monopolist became a monopolist is squarely relevant to whether there is a violation. On the acquisitions, it's true that we don't base separate, standalone claims on any given acquisition, but the acquisitions are the way that Google gained market power in the Now, you know, these are material allegations, but even if reasonable people could disagree about that or argue about their relevance, we shouldn't suffer the capital punishment of civil litigation of being thrown out of court with prejudice. The touchstone for these kinds of issues is in Wieland, which surveys 60 some odd published shotgun pleading decisions. And it says the question for the district court is whether it's virtually impossible to know which allegations of fact are intended to support which claims for relief. The district court didn't acknowledge that standard, didn't find it to be satisfied. And one of the things I noticed last night that I hadn't noticed before, Judge Rosenbaum, is that you sat last year on an unpublished decision reviewing an order by this judge, and you did affirm a dismissal for shotgun pleading, but you noted in your opinion and the district court noted that the virtual impossibility standard was met. I said your opinion, it's per curiam, I don't know who wrote it. This case is not like that. It is not true here that you cannot tell which allegations support which count because we in the amended complaint expressly direct the district court to particular allegations. District court even includes a chart in footnote one of the second order showing exactly what counts are relied upon, sorry, which paragraphs are relied upon for each count. Once we do that, we're in 12b6 territory. We're at the 12b6 table at that point. Well, the district court also said, and I think you were going to get to it because you said there were a couple of reasons why the court thought that your amended complaint was a shotgun pleading, but one of them was the alleged failure to identify conduct attributable to each one of the defendants. That's correct. Do you want me to move quickly? Can I make a few comments and then move quickly to that point? Sure. Okay, so back on the immaterial allegations point, the district court identifies the count, the paragraphs on which we're relying. Now, yes, there are 50 some odd of them. The exclusionary conduct allegations comprise 50 some odd paragraphs of the complaint. Why? Not because we're bad pleaders, but because Google did a variety of things to exclude rivals from the market. And remember, we're working against the Twombly standard here. If you don't put in sufficient factual detail for your antitrust claim, you're out of court. And the complaint is only going to be so simple when you're alleging monopolization of multiple markets by one of the largest companies in the world. By contrast, the regulatory complaints that the regulators have filed are over 700 paragraphs and some 250 pages long. We did it in the amended complaint in about 86 pages or 85 pages of allegations. And so we can make this only so simple without running into a Twombly problem. I think it was Einstein who said something like, everything should be made as simple as possible, but no simpler. And he said that before Twombly. But certainly after Twombly, we can't oversimplify. Now, Judge Jordan, moving to your question about the defendants, let's just take them in order of ease. Google LLC. Google, the word Google in the first amended complaint means Google LLC. That's a change from the original complaint. And multiple paragraphs of the complaint, we list them in our brief at page 19, footnote 5, identify specific conduct by Google LLC, that Google was the direct actor, in fact, in all or virtually all of the misconduct. Google cannot complain of a lack of notice. My colleagues are able lawyers. They were able to file a cogent, I think meritless, but cogent 12b6 motion that in the first instance talked about shotgun pleading only in one generic paragraph reciting the standard. Second defendant, YouTube LLC. There are again, and it's on the same page of my brief, footnote 8, there are specific allegations in the complaint attributing specific conduct to YouTube. Now, the third defendant is Alphabet. As to Alphabet, this is our theory, and this is what we have. We believe that under an extension of the Copperwell Doctrine by the U.S. Supreme Court, as recognized in Ninth and Tenth Circuit law, that when defendants act and are operated as a single economic entity, that they are all liable for a Section 2 monopolization claim. Now, like it, don't like it, that is our theory. The district court didn't get into it, but it's not a failure to tell anyone why we believe that Alphabet's liable. That's in paragraph 17 of the complaint. But at worst- Your position is that if that's a problem, it's a 12b6 problem and not a shotgun pleading problem. Absolutely. That's the first of my thoughts on this. And the second of my thoughts is in no way does this get Google out. In no way does this get YouTube out. If there's a problem with our theory as to Alphabet, then Alphabet gets out. Unless you're running down on time, so let's talk about antitrust standing. Absolutely. So, two requirements. Antitrust injury, which is injury that flows from the restriction of competition. An excluded competitor suffers precisely that sort of injury. And you have held that again and again and again. The Palmyra case is great. It was painful because I lost that one, but I can't lose that one and this one because the cases are virtually indistinguishable in terms of the argument that the district court bought. So, what the district court said is, you're not an efficient enforcer because I think that the advertisers and the publishers that are forced to deal with Google and are overcharged are the more directly injured parties. In the Palmyra case, what the district court had accepted was that the excluded hospital was not as directly injured as the health insurers who had to overpay and the patients who had to overpay. And you said no, and rightly so. I knew I was going to lose that case. We tried to get affirmance on alternative grounds. But what you said was even if the excluded hospital's injury occurs, quote, several steps down the line, it's still outstanding. And one of the points you made in that case, and it's absolutely true, is there is a unique injury that an excluded competitor like Enform suffers that no one else can enforce. So, we went from a $35 million a year revenue company to kaput because of the exclusionary conduct alleged in the complaint. If we can't recover for those lost profits, no one can. And so, the upshot of efficient enforcer shouldn't be that there is an injury inflicted upon a victim of antitrust conduct that is simply not addressable. And I know I've got some rebuttal time left. Is there anything particularly you'd like to steer me to in the remaining minute 40 of my opening remarks? Well, this district court said with regard to the injury component of standing, of antitrust standing, that the allegations were too conclusory to show antitrust injury because there was no factual support for a claim that Google and the other defendants weakened the competition. So, one thing I would point about that is that contradicts the efficient enforcer ground. The premise of the efficient enforcer ground is that there was an injury to competition, but it was more severely suffered by consumers. So, that's thing one. Thing two... I'm sorry to interrupt, but the efficient enforcer ground, it seemed to me, was that if there was an injury... So, I'm not sure it contradicts. Maybe I oversold that, Your Honor. Let me back up and go with a different response, which is the thing that I don't think is right about the district court's attack, and Google respectfully does this in its brief, is it will seize upon what is a concluding paragraph. But it's a concluding paragraph supported by the items that come before. And so, for example, the paragraphs that come before don't allege merely that Enform was driven out of business, but that multiple people in Enform's position were driven out of business. It is all of the rival advertising agencies whose clients' ad stock was developed through Adobe Flash, not just ours, for example. And so, there is a very direct allegation that Google captured the market share that we used to hold and that our rivals used to hold. And that is just classic antitrust injury under the HTML5 is publicly available and free. It is. So... How can that be a problem? I mean... Right. And so, here is the reasoning of that. And Google does have, I mean, this is their defense. We're simply protecting consumers. This was pro-consumer. We're opening it up to competition because it's open source code. But you have to look at the allegations, the well-pleaded factual allegations, and it's in the 100 to about the 126 paragraph range in our complaint about why they made this conversion. The reason they did it is so that Google, through its Chrome browser, not the publisher, could control whether anyone's video advertisement would autoplay or play with volume. Now, if you're a video advertiser, you may find it annoying as a web browser. But as a video advertiser, you want your videos to autoplay and you want them to play with volume. And so... Right. And I understand that. But I guess... And I recognize that it would be a pain in the neck to convert it to HTML5. But isn't that an option? I mean... So, what we allege in the complaint, and it's in that same range of paragraphs, is that it is very expensive and time-consuming for an advertiser to convert its ad stock from Flash to HTML. But here's what Google did. After creating that artificial problem, Google then supplied a self-serving exclusion that excluded competitors. And this is what I mean by that. You, as my advertising client, if you want to use me, Enform, you have to go through this expensive and time-consuming conversion process. Or you can jump ship and do business with these guys, and your ad will automatically play. It'll automatically convert to HTML. And so, that gives our advertiser clients a choice. We can incur this huge additional expense and delay, or we can go across the street to Google and leave Enform behind. Publishers are the same way. If you're a publisher, you want clicks because you get paid by clicks. So, if you're one of our publisher clients... Say, Josh Jordan is one of our publisher clients. He's not going to want to sit around and wait for our ad to say, hey, Google, why don't you sell my space on my web space? Because I know when you do that, the videos are going to play, and they're going to get clicked on. And so, why would either of you stay with us? And people didn't. I could probably talk about this more, but I don't want to overstay my welcome on an after-time question. So, do you want to hear more from me on this, or should I sit down? I think I'm good for now. Thank you, Bill. Thank you. All right. Thank you very much. You saved your time for rebuttal, Mr. Lowery. Thank you. How do we pronounce your last name? Schmidlein? Yes. Thank you, Your Honor. Schmidlein. May it please the Court. Good morning. My name is John Schmidlein, and I represent the defendants and appellees in this case. The plaintiff in this case, in form, represented by competent counsel, made a strategic decision when it filed its original complaint, alleging a whole buffet of different conduct and a slew of different allegations, different counts, and amongst those counts, multiple markets within counts. The district court judge faced with this buffet was unable, as frankly we were, or we had a great deal of difficulty trying to figure out what conduct goes with what claim. And even within the claim, and I will say I've been doing antitrust cases for almost coming up on 30 years, as I was preparing for this argument, I couldn't remember a case where a plaintiff in a particular count, let's say I'll take count two, since they apparently have, they are not appealing the dismissal of count one. Count two is a count for monopoly maintenance. The plaintiff in this case claims that through conduct, supposedly within the complaint, that the Google defendants have unlawfully maintained monopolies, not unlawfully acquired a monopoly, they've unlawfully maintained monopolies in seven different markets. I've never seen a plaintiff allege in a single count monopolization of seven different markets. Can we focus for a moment on the online video advertising market and the online advertising market? Yes, Your Honor. So with respect to those two markets, which are the only markets that they suggest that they compete with Google in, and the online video ad market, as I understand it, the online video ad market was not in the original complaint. That was added after the judge threw out the first complaint on shotgun pleading. And I believe, although it's not entirely clear, I believe that is a subsection of the online advertising market. They've tried to carve out a separate one that is just video ads, and they purport to claim that video ads online don't compete with like video ads that you see on television. And they are claiming that somehow within that market, there is certain conduct that has allowed Google to, under count two, maintain a monopoly in that market, all the defendants. So I think, as I understand what your friend is saying, the allegation is by migrating to HTML5, when all of these other companies were using Flash, and by only playing, you know, automatically playing with through you, that you have sort of cornered the market there. Do you want to address that? Sure. The original complaint contained allegations that basically all of the major web browsers announced that they were going to convert from Flash to HTML5. This wasn't a Google-led issue? I will tell you, I'm not sure that converting from Flash to HTML5 in and of itself presents an issue. But I think the crux of what they're arguing is that after you did that, you then sort of bumped to the bottom of the line, if you will, those ads that play on Flash, unless they went through you directly, in which case they would be played in the same way, they would be automatically converted to HTML and played like HTML ads. Yeah, I think, again, it's not entirely clear, I think what they're trying to say is, Google agreed that they would incur the expense to convert them to HTML5, which is something that the plaintiff could have done. The other thing to remember here is they alleged that the announcement with respect to moving away from Flash to HTML5, the first one with respect to Chrome occurred in 2017, or 2014, excuse me. It wasn't until 2017 that Google disabled as the default being able to use Flash. Google didn't, and all the web browsers, Apple Safari, Microsoft, Internet Explorer, and now Edge, none of these browsers overnight said, no more Flash. That would never have worked. That's not what they've actually pled. They announced that there was going to be a going forward. They didn't pull ads that were running in Flash today and immediately disable them. I understand all of that. My point is they had plenty of time to switch and to help their clients switch at no cost. Google didn't benefit from over a three-year period having people move from a proprietary technology to an open source technology. How would they help their clients switch and keep them as their clients and have them switch at no cost? Going forward, in other words, they didn't. It was only if you kept old advertising campaigns. I mean, people are changing their advertising campaigns all the time. That's true, but a lot of businesses also maintain older campaigns for some time. They do, and they had a decision to make. They could either convert that, or Google would convert it for free, or they could convert it for them. That's competition in the market. That's my question, though. Their argument is because Google would convert it for free, that their clients were going to go to Google because they'd have to pay them Enform to convert it instead, or else Enform would have to incur the charges itself, which it sounds like it couldn't do. But that happens all the time in the market. I mean, a company isn't obligated not to change the technology and its products because over time other people are going to have to make changes to accommodate to that technology. There's nothing, and that's why all of the other allegations, they didn't want to make this claim the central standalone claim. They lob all of these other things into their complaint to hide the fact that if they actually had tried to plead this claim, it would have been thrown out. Let me ask you something else, because you all argue in addition to antitrust standing, Article 3 standing, and you did below. I mean, it seems to me like that's the first thing that have to address, because if there isn't Article 3 standing, or if there isn't Article 3 standing on everything, then we don't have jurisdiction. Correct. And I think the clearest Article 3 standing issue, they claim that they suffered some overcharge with respect to ad servers. But they don't actually say that they paid Google ever for an ad server. They claim that they have to rely on Google's technology. In all of the 89 pages, 211 paragraphs, there's not a single allegation in either of these complaints that they had a contract with Google, and they had to pay Google for use of an ad server, as opposed to their clients, either an advertiser or a publisher, who might use that technology. They never claim they had an overcharge or an overpayment, and without that... It seemed like they were suggesting they lost clients as a result of this. Is that not an injury? That can be an injury, but they don't say that, again, for the ad server piece, they don't say that was their injury. They say it was an overcharge. With respect to the online advertising and the video, which you referred to, they do say that that is their injury. And I would say that for those, they probably do have Article 3 standing as to those. If, in fact, a lost profit, lost customer, our argument there is the antitrust standing, which... And the argument for the rest of the claims would be the Article 3 standing? And the antitrust standing, too. Correct. With respect to, for example, saying that they were harmed in the internet search market, they don't claim that they actually suffered any financial injury as a result to anything having to do with internet search. They're not in that market. They're not in the licensable mobile operating system market. They're not in the web browser market. Can I turn you to the grounds that the district court relied on? Yes. Because I know you've been talking with Judge Rosenbaum about some of the sufficiency issues in the complaint. I have real difficulty seeing how this is a shotgun pleading. I mean, the district court says that there are some conclusory, vague, and immaterial facts. That doesn't make something a shotgun pleading. It says that count one has several conclusory paragraphs. That's not a shotgun pleading. It says that there's no reference in count one to a specific agreement. That may be a 12B6 problem, but it's not a shotgun pleading problem. And then it says that there's a failure to identify conduct attributable to each defendant. But at least as to Google, LLC, and YouTube, there are specific factual allegations in the complaint. So there may be all sorts of issues with the complaint, but I fail to see how it's a shotgun pleading. Your Honor, again, going back to count one, which they have an appeal, but we can use that as because that's the district court count. That's the example it gave. Correct. I mean, it didn't give examples about anything else. It says, for example, in count one, here's what they've done wrong. So as to the seven markets, they claim that the Google defendants, which means all three, have monopoly power in all seven markets. They then go and describe the markets, and they don't describe what Alphabet does in those markets. They don't really describe what YouTube does in those markets. So... Which is, well, maybe a 12B6 problem. It's not... Our circuit has tons, unfortunately, opinions on shotgun pleadings, and they're all over the place. But it can't be that a complaint that is substantively deficient in one way, shape, or form constitutes a shotgun pleading. I mean, we started out this whole shotgun pleading thing with a complaint that incorporated legal counts into legal counts. That's how all this started. And that's understandable. You can't have a complaint with four counts where every count incorporates not just general factual allegations, but it also incorporates counts one, count two, and count three, because then you have no idea what the count is made up of. Right. And I know we've migrated beyond just that problem, but I... I think, though, at its core, the core principle is, at least as I've read the shotgun pleading rulings from this circuit, the district court shouldn't be left with a massive complaint and the job of going back, and neither should the defendant, but the district court should not be forced to go back and try to figure out restraint of trade as to seven supposed relevant markets. I don't have a clear articulation as to which defendant is doing what in which market, and I have 60-some-odd paragraphs of supposed conduct, anti-competitive restraint conduct. Most of those paragraphs have nothing to do with an agreement, and most of those paragraphs do not tell me, is this conduct related to what market? I'm... The judge is left... The district court judge is left to go back and try to figure out how to draw the arrows connecting which piece to which market to which claim, and that's what the district court judge here threw his hands up and said. Well, that's a much more detailed explanation than the district court gave. The district court didn't go into anything about markets and overlapping allegations of conduct or what each defendant did or didn't do. It just says, you failed to identify conduct attributable to each defendant. That's the sum and substance of it. And that I'm staring at dozens and dozens of paragraphs, most of which have nothing to do with any agreement. Any restraint. No, go ahead, go ahead. But why isn't the proper remedy? Assuming we agree that the 50 paragraphs or whatever it is are immaterial, why isn't the judge limited to striking those paragraphs as opposed to granting a death penalty dismissal? Because I believe in this circuit, if the district court judge has given the defendant or given the plaintiff an opportunity to amend, if the district court judge has clearly identified the problems and the issues and the plaintiff does not fix those, it is not an abuse of discretion for the district court judge to dismiss those claims with prejudice. That is the Vibe micro case that I believe Judge Rosenbaum was a member of the panel on. That's the Jackson v. Bank of America case. The judge, it might not be an abuse of discretion for the judge to have chosen the path, Your Honor, that you suggest, but it is not an abuse of discretion having given them that opportunity to dismiss with prejudice. With regard to whether or not inform is an efficient enforcer, the district court didn't address some of our relevant decisions on when an alleged competitor who was allegedly harmed can be an efficient enforcer. I mean, there's some cases that sort of scream reversal on that aspect of the district court's opinion, Palmera's being one of them. Well, I think, I mean, the efficient enforcer is one of two necessary prongs that you have to meet. I know, and that's the one I'm talking to you about. Right. And he obviously found that both prongs were not met. I think in the efficient enforcer, as I understand their argument, the only argument that they're really making is, is, well, we suffered a harm that other people didn't suffer. And so therefore... No, but they're also alleging that they are a competitor who got hurt. And they're arguing that some of our cases say, although you may not be the most efficient enforcer, you can be un-efficient enforcer. And that's enough for pleading purposes, at least. I think the efficient enforcer analysis and all of those various prongs and questions that you ask as part of the efficient enforcer, I think do go to a question of how direct is your injury? How speculative is your injury? And the district court judge did go through those and find your injury is basically derivative of a publisher injury or an advertiser injury. And I think when your injury is derivative and those people stand in a more direct relationship, I think that does, I think that does speak to and does address the efficient enforcer prong in addition to the antitrust injury prong, which they have to separately meet. I know I'm over my time, but thank you for your... You're answering our questions. So thank you very much. Thank you, Your Honors. Until the 4 minute and 41 second mark, that sounded like a 12B6 appeal or even a summary judgment appeal. Can I, I'm sorry to interrupt, but... Oh, please. Your friend on the other side has conceded Article 3 standing with respect to the online advertising and online video advertising. Correct.  with respect to the rest of the claims? Certainly. And so the injury, it's the same injury. We are an excluded competitor for purposes of counts 2 through 4, which are the monopolization offenses. And the effect of the exclusive dealing and tying arrangements in counts 5 and 6 are also to exclude us from competing for customers. And so Palmyra deals with all those sorts of claims. And the Article 3 theory is that we weren't allowed to serve customers profitably. So my colleague did attack my standing as a consumer of Google's services. We certainly believe that the fair inference from paragraphs 98 and 99 is that we overpay for those services. It's true there's not a specific service contract identified or something, but overpayment is an Article 3 standing for antitrust claims. I, you know, the big windup I was going to start with was talking about how much of the, of his argument, and you pulled the rug out from under me and that's fine, but how much of his argument was about 12b6 and merits issues. And look, that's not an accident. I mean, Judge Jordan is right. This is not a shotgun pleading. It's just not. And I certainly respect that you can affirm on grounds not reached by the district court, but you have repeatedly not done so under circumstances that are really not distinguishable. And we cite those cases at pages 24 to 26 of our reply brief, but Palmyra is one, Gulf States, La Grasta, Caballere, and all of those the district court ruled on one ground, and rather than embark on a 12b6 analysis that the district court didn't conduct at all. I mean, why would you do that to yourselves? Why would you do district court work in the first instance, particularly in a highly truncated format? I mean, I've got, you know, three minutes of rebuttal to talk about this. I had a fraction of the words in my reply brief to talk about these 12b6 arguments. And it's just a bad forum for that. And even if you decided that I had a problem in some of my allegations that was a 12b6 problem, I would get a chance to amend. It would be effectively the first order in this proceeding saying, Lowry, you know, you're missing elements from your monopolization count or whatnot. And I ought to be able to amend. And then you'd have to decide, I guess, in your appellate discretion whether I get to do that. That's just not what appellate courts do or should be doing. To one point, I think that bears emphasis is even after the migration from Flash to HTML5, look at paragraphs 121 to 126. And I'm going to ask Zoe to confirm that those are right. And she's going to give me a nod in a second. But those are the ones that you should look at. Because those talk about how even after migration, Google used its Chrome browser to discriminate against video ads, autoplaying, and playing with audio if you place them through a competitor. And so it's not just a conversion issue. And I get that they've got a merits defense of how conversion was an absolutely benevolent thing and that you inform is to blame for its injury. But that is a merits issue. That does not flow from the fair inferences of the facts we pleaded. Time is short. Is there someplace, I've got some ideas of what to talk about. Is there someplace you want to steer me first? So your rebuttal. My rebuttal. Fair enough. Talking about the excluded, the inefficient enforcer. You're right, Judge Jordan. There are, there's rich circuit case law on this. One of the cases I didn't talk about in my lead argument is municipal utilities. And in that, the court comments that an injury, an exclusion of a competitor is inseparable from an injury to competition. Competition requires competitors. And so it is, whether you want to say it's two sides of the same coin or whether it follows from the nature of the exclusionary conduct, you know, however you want to explain it, I think that point's well taken. And I do feel that there's a certain amount of whipsawing going on on that because, you know, we are alleged to filing an overly long complaint. And then on the antitrust injury side, we supposedly didn't stay enough. I feel like the porridge is just never going to be right for us on this. We allege that we were in the markets, that we were making money, that we provided similar services. Google did the things in the complaint which aren't limited to HTML conversion. For example, Google conditions access to YouTube, the second most visited website in the world. A great place to put your video advertisements. Trust me, I've got a teenager. Conditioned access to YouTube on using Google's ad buying tools. That's paragraph 135. If you use Google's ad exchange, if you use Google's ad buying tools, you're advantaged in the ad exchange. And I am out of time unless there's any place else you guys wish to steer me. Thank you. Thank you both very much. Well argued.